1   **WO**

2

3

4

5

6          **IN THE UNITED STATES DISTRICT COURT**

7          **FOR THE DISTRICT OF ARIZONA**

8

9   Paula Buccini,                              No. CV-22-00467-TUC-MSA

10              Plaintiff,                       **ORDER**

11  v.

12  Commissioner of Social Security
    Administration,
13

14              Defendant.

15          Plaintiff Paula Buccini seeks judicial review of an unfavorable decision issued by

16  the Commissioner of Social Security Administration. The matter has been fully briefed.

17  For the following reasons, the Commissioner's decision will be affirmed.

18                              **Background**

19          Plaintiff is 58 years old. (AR 162.) She completed high school and cosmetology

20  school. (AR 203.) She worked as a cosmetology teacher for 13 years before quitting in

21  early 2021. (AR 203.) Before that, she worked as a hair stylist for 14 years. (AR 203.) She

22  alleges that she is disabled because of heart disease, difficulty breathing, fatigue,

23  headaches, and back pain. (AR 202.) She says that she loses her breath when she talks,

24  climbs stairs, stands for long periods of time, or lifts more than five pounds. (AR 79, 214,

25  218.) She also says that she needs breaks to complete household chores such as laundry,

26  and that she can walk or concentrate for only 15 minutes at a time. (AR 80, 82, 214–15,

27  218.)

28          In 2021, Plaintiff filed an application for disability insurance benefits. (AR 162.)

1    The application was denied initially and on reconsideration. (AR 93, 103.) Plaintiff

2    requested a hearing before an administrative law judge (ALJ), and a hearing was held in

3    February 2022. (AR 71–92, 132.)

4          After the hearing, the ALJ issued a written decision following the five-step process

5    for determining whether a person is disabled. 20 C.F.R. § 404.1520. At step one, the ALJ

6    found that Plaintiff had not engaged in substantial gainful activity since her alleged onset

7    date. (AR 57.) At step two, the ALJ found that Plaintiff had three severe impairments:

8    congestive heart failure, coronary heart disease, and obesity. (AR 57.) At step three, the

9    ALJ found that Plaintiff did not have an impairment or a combination of impairments that

10   met or medically equaled the severity of a listed impairment. (AR 58–59.) Between steps

11   three and four, the ALJ found that Plaintiff had the residual functional capacity to perform

12   light work with certain exertional limitations. (AR 59.) At step four, the ALJ found that

13   Plaintiff could return to her past relevant work as a vocational instructor. (AR 62.) The ALJ

14   therefore concluded that Plaintiff was not disabled. (AR 63.)

15         The Appeals Council denied review, making the ALJ's decision the final decision

16   of the Commissioner. (AR 1.) This lawsuit followed.

17                                      **Legal Standard**

18         The Commissioner's decision will be affirmed if it is supported by substantial

19   evidence and free of legal error. *White v. Kijakazi*, 44 F.4th 828, 833 (9th Cir. 2022)

20   (quoting *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996)). "Substantial evidence . . .

21   is such relevant evidence as a reasonable mind might accept as adequate to support a

22   conclusion." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (alteration in original)

23   (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

24                                        **Discussion**

25         Plaintiff's lone claim of error is that the ALJ failed to provide legally sufficient

26   reasons for discounting her symptom testimony. Plaintiff testified that it takes very little

27   for her to lose her breath, and that sweeping or mopping for two or three minutes, walking

28   her dogs for 15 minutes, or even talking can cause shortness of breath. (AR 79–80, 82.)

1    She also reported occasional chest pain and heart palpitations when she lifts more than a

2    gallon of milk.[1] (AR 80.)

3         The parties agree that the ALJ could discount these reports only for "specific, clear

4    and convincing reasons." *Smith v. Kijakazi*, 14 F.4th 1108, 1112 (9th Cir. 2021) (quoting

5    *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)). This standard is satisfied when

6    "the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*,

7    53 F.4th 489, 499 (9th Cir. 2022). In this case, the ALJ found that Plaintiff's testimony was

8    inconsistent with the record, which showed that Plaintiff improved after being observed

9    with dyspnea (shortness of breath) in early 2021. (AR 61.) In particular, the ALJ found that

10   the testimony was inconsistent with (1) objective medical findings, (2) prior statements

11   Plaintiff made about her symptoms, and (3) two medical opinions. (AR 60–62.) As

12   discussed below, these reasons satisfy the clear-and-convincing standard. *See Smartt*, 53

13   F.4th at 498 (stating the ALJ may rely on inconsistent medical findings); *Popa v. Berryhill*,

14   872 F.3d 901, 906 (9th Cir. 2017) (inconsistent prior statements); *Moncada v. Chater*, 60

15   F.3d 521, 524 (9th Cir. 1995) (per curiam) (inconsistent medical opinions).

16        The ALJ observed that Plaintiff failed a stress test in January 2021 due to fatigue,

17   and that she reported increasing dyspnea in February and March 2021. (AR 60.) The ALJ

18   then found, based on later records, that Plaintiff's condition improved to the point of non-

19   disability. (AR 61.) The ALJ observed that 24-hour heart monitoring in April 2021 showed

20   Plaintiff had normal sinus rhythm except for two short runs of atrial tachycardia. (AR 60,

21   523.) Tachycardia is "[a]n abnormally rapid beating of the heart," which is a condition that

22   could reasonably be expected to produce shortness of breath. *Tachycardia*, Attorney's

23   Dictionary of Medicine (2022). As such, the ALJ could rationally find that the heart

24   monitoring results, which showed normal heart rhythm with minimal tachycardia, were

25   inconsistent with Plaintiff's testimony. Furthermore, during an appointment that same

26   month, Plaintiff denied dyspnea on exertion, chest pain, and irregular heartbeat. (AR 458.)

27

28   [1]     Plaintiff also reported frequent headaches, issues with her memory and ability to concentrate, and daytime somnolence that requires her to take naps. (AR 78–79, 81, 214, 218.) She does not take issue with the ALJ's treatment of these other reported symptoms.

1    The ALJ next observed that, in June 2021, Plaintiff reported "improved shortness

2 of breath." (AR 60, 519.) In addition, she had no "other cardiac complaints," and her

3 congestive heart failure was "compensated clinically." (AR 60–61, 519.) The ALJ then

4 noted, accurately, that Plaintiff often denied "shortness of breath or chest pain with

5 exertion." (AR 61; *see* AR 549 (July 2021); AR 614 (August 2021); AR 620 (September

6 2021).) The ALJ could rationally find that Plaintiff's testimony about severe symptoms

7 was inconsistent with her prior reports of improved symptoms or no symptoms. The ALJ

8 could also rationally find that Plaintiff's testimony was undermined by evidence that her

9 heart disease had compensated clinically. This is because dyspnea "[i]n most cases . . . is

10 due to heart disease," *Dyspnea*, Attorney's Dictionary of Medicine (2022), and

11 "compensated" heart failure typically means improved symptoms. *See Decompensation*,

12 Attorney's Dictionary of Medicine (2022) (stating that decompensation of a heart condition

13 "is marked by . . . shortness of breath (dyspnea)").

14    The ALJ noted that Plaintiff did not report dyspnea again until December 2021.

15 (AR 61, 635.) At that time, however, she denied other cardiac complaints. (AR 635.) Her

16 next report of dyspnea came in March 2022. On March 22, she reported difficulty

17 breathing, but that was accompanied by flu-like symptoms, and she was discharged with a

18 diagnosis of acute bacterial bronchitis. (AR 656, 659.) Notably, that is a temporary

19 condition that could reasonably be expected to cause shortness of breath. *Bronchitis, Acute*,

20 Attorney's Dictionary of Medicine (2022) (stating that acute bronchitis has "a short but

21 rather severe course" and is occasionally "marked by . . . shortness of breath"). The ALJ

22 next observed that, in April 2022 (when the record ends), Plaintiff's pulse oximetry was

23 98% after walking on "room air" for a couple of minutes. (AR 61, 674–75.) Dr. Richard

24 Palmer, the doctor who administered the walking exercise, observed that while Plaintiff

25 claimed that the exercise had left her breathless, she showed no signs of breathlessness.

26 (AR 61, 675.)

27    In the ALJ's view, the foregoing evidence showed that Plaintiff's dyspnea improved

28 to the point of non-disability. (AR 61.) That interpretation is rational. Plaintiff frequently

1    denied dyspnea and problems with her heart. When she presented with dyspnea, there were

2    other potential causes present. (*See* AR 461–62, 465 (in March 2021, Plaintiff had dyspnea

3    even at rest, but she had recently had COVID); AR 656, 659 (in March 2022, Plaintiff had

4    dyspnea when she had acute bronchitis).) The objective medical findings (heart monitoring

5    and pulse oximetry readings) indicated her heart was functioning properly, and her provider

6    noted that her heart disease had compensated. The ALJ could rationally conclude that this

7    evidence undermined Plaintiff's testimony that she suffered from severe dyspnea.

8         The ALJ also relied on two medical opinions. (*See* AR 61 (noting that Dr. Palmer

9    "opined that the claimant can perform light exertion"); AR 62 (stating that the residual

10   functional capacity was supported by the opinions of the state-agency doctors and Dr.

11   Palmer).) The state-agency doctors found that Plaintiff's symptoms were not as severe as

12   alleged, as she had reported improved symptoms and her heart condition was noted to be

13   compensated and stable. (AR 110.) Based on their review of the record, they also found

14   that Plaintiff could walk and stand for a significant part of the day. (AR 111–12.) Dr.

15   Palmer, a consulting physician, reached a similar conclusion based on his review of the

16   record and on his own examination. (AR 678–82.) The ALJ found these opinions

17   persuasive because they were well-supported with citations and were consistent with the

18   record. (AR 62.) The ALJ could rationally find that such evidence undermined Plaintiff's

19   testimony.

20        Plaintiff contends that the evidence cited by the ALJ does not actually undermine

21   her specific symptom testimony. As an example, she argues that Dr. Palmer's observation

22   that she can walk for "a couple minutes" without experiencing dyspnea does not undermine

23   her testimony that she experiences dyspnea after "walking the dogs for approximately

24   fifteen minutes." (AR 80, 675.) However, the thrust of Plaintiff's testimony was that it took

25   very little for her to lose her breath. (AR 79 ("I don't have to exert myself very much to

26   have the shortness of breath.").) For instance, she testified that she could lose her breath

27   simply from sweeping or mopping for two or three minutes, or even from just talking for

28

1    a short period of time.[2] (AR 79, 82.) In this context, the Court cannot say that the ALJ's

2    findings were irrational. *See Smartt*, 53 F.4th at 499 ("The standard isn't whether [the]

3    court is convinced, but instead whether the ALJ's rationale is clear enough that it has the

4    power to convince.").

5         Plaintiff also contends that the ALJ erred by conflating her ability to do "light

6    activities" at the consultative examination with the ability to do "light exertion," as that

7    term is defined for purposes of social security claims. She points out that Dr. Palmer did

8    not have her "lift[] a 20-pound weight" or "stand[] for a significant length of time," both

9    of which are required for light exertion. The Court disagrees that there was any such error.

10   As an initial matter, Dr. Palmer did not need to make Plaintiff lift 20-pound weights or

11   stand for six hours before opining that Plaintiff could do so. Moreover, the ALJ did not

12   confuse light activity with light work. The ALJ rationally found, based on the longitudinal

13   record and the opinions of two physicians, that Plaintiff's symptoms improved to the point

14   that she could perform light work. The consultative examination was only part of that

15   broader analysis. The Court rejects Plaintiff's claim of error.

## Conclusion

17        The ALJ's decision is supported by substantial evidence and free of legal error.

18   Therefore,

19        **IT IS ORDERED** that the Commissioner's decision is **affirmed**. The Clerk of

20   Court is directed to enter judgment accordingly and close this case.

21        Dated this 12th day of September, 2023.

22
                                        _____
23                                      Honorable Maria S. Aguilera
                                        United States Magistrate Judge

24

25

26   [2]   In her opening brief, Plaintiff claims her testimony was that she loses her breath
     after "speaking for *extended* periods of time." She said no such thing. During her hearing
27   before the ALJ, she remarked that "[a]s [she was] sitting [there] talking, [she was] having
     a little bit of shortness of breath." (AR 79.) That remark was near the middle of her brief
28   testimony, and she had given mostly short answers (many "yes" or "no" answers) up to
     that point. (AR 71–79.)